# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**CHRISTOPHER DAVIS and BOB PACOVSKY**  PLAINTIFFS

V.  CAUSE NO.: 1:06CV252-SA-SAA

**CITY OF BOONEVILLE, MISSISSIPPI and**
**CHIEF OF POLICE TIM FORTENBERRY**  DEFENDANTS

## AMENDED MEMORANDUM OPINION

Comes now before this Court, Defendants' Motion for Summary Judgment [55]. After reviewing the motions, responses, rules, and authorities, the Court makes the following findings:

*Factual Background*

At approximately 8:58 p.m. on October 18, 2005, a high speed police pursuit initiated by law enforcement officers from the towns of Guntown and Baldwyn entered the city limits of Booneville, Mississippi. The Baldwyn and Guntown units requested assistance from Booneville Police Department in their pursuit of a stolen vehicle which was reaching speeds of 100 to 120 miles per hour. Sergeant Michael Hall and Patrolman Josh Davis responded first and joined the pursuit to the west of town. As Hall and Davis approached the city limits of Booneville, the edge of their jurisdiction, they radioed Captain Jerry Bridges, shift supervisor, for permission to continue the pursuit as required by department policy. Captain Bridges advised Sergeant Hall and Patrolman Davis to proceed westward toward Jumpertown and for all other units to stay in the city.

Sergeant Bob Pacovsky, patrolling the east side of town when the request for assistance call came over the radio, turned on his emergency sirens and lights and raced toward the opposite side of town. Pacovsky claims that as he was heading west, he heard over the radio that one of the Baldwyn officers was "10-7," which means "out of service." Pacovsky thought this meant the

officer had crashed near the city limits on a particular county road. Pacovsky did not realize the Baldwyn police officer had blown his radiator, was pulled over on the side of the road, and was passed by Pacovsky as he headed west through Booneville.

Pacovsky reached the edge of the city limits and passed his supervising officer, Captain Chris Davis, who was parked in his patrol car at the city limits sign. Davis pulled behind Pacovsky and followed him out to Pisgah Road, about 1.5 to 1.7 miles outside of Booneville. When the officers did not find a wrecked patrol car, they pulled off the two lane road and parked.

Around 9:04 p.m., Pacovsky pulled into the westbound lane facing east and Davis pulled into the eastbound lane facing east where they both stopped. Seconds later, Sergeant Hall radioed that the suspect was heading back toward the Booneville city limits at a very high rate of speed. On the radio and to Captain Chris Davis, Pacovsky stated, "rolling road block." Five seconds later, the fleeing suspect struck both Sergeant Pacovsky and Captain Chris Davis in the rear, totaled all three cars, and injured the two officers and Pacovsky's K-9, Pax. The accident occurred approximately 1.3 miles outside the city limits of Booneville on Highway 4.

The Booneville Police Department's policy on roadblocks states:

There shall be no bumping, ramming, blocking, or boxing in the pursued vehicle unless based on the existing circumstances the use of deadly force would be justified.

\*    \*    \*

Roadblocks are prohibited unless the circumstances would otherwise warrant the use of deadly force. Roadblocks may only be established with a supervisor's approval. If a roadblock is established, officers must:
    A.    Allow the suspect vehicle reasonable stopping distance.
    B.    Not place themselves in a roadblock in line with the oncoming suspect vehicle.
    C.    Reasonably ensure the safety on non-involved pedestrians and motorists.

Pursuant to police department policy, Chief of Police Tim Fortenberry determined that the involvement of the Booneville police officers should be reviewed and critiqued by an internal affairs investigation unit. Two criminal division investigators, Captain Michael Ramey and Sergeant Jerry Barnes conducted an investigation and provided Fortenberry with a review and critique of all officers involved in the pursuit. Fortenberry reviewed that document, concurred with its findings, and determined that certain disciplinary actions should be taken resulting from that October 18 pursuit. He prepared a report detailing the actions of the officers which he felt were deficient and made recommendations for disciplinary action.

On February 13, 2006, Fortenberry presented to the Mayor and Board of Aldermen the results of the internal affairs investigation and his recommendations for disciplinary action. Chief Fortenberry recommended the following punishments for those involved in the high speed pursuit on October 18:

- <u>Captain Jerry Bridges</u>: No violations found.

- <u>Sergeant Michael Hall</u>: Written reprimand placed in his personnel file for engaging in the pursuit when he had no visual contact with any law enforcement vehicles involved in the pursuit.

- <u>Patrol Officer Josh Davis</u>: Counseling session and review of the pursuit policy because he followed his immediate supervisor, Sergeant Michael Hall.

- <u>Captain Chris Davis</u>: Termination for allowing a subordinate officer, Pacovsky, to leave the city limits, following Pacovsky outside the city limits, failing to tell dispatch that they were outside the city limits, not following Capt. Bridges order to stay inside the city limits, not following the pursuit policy on roadblocks, injuring himself, Pacovsky, K-9 Pax, and the driver of the stolen vehicle, as well as destroying two city patrol units and a stolen vehicle.

- <u>Sergeant Bob Pacovsky</u>: Termination for responding from the opposite side of town, failing to slow at the city limits, initiating the rolling roadblock, pulling into an oncoming lane of traffic, instructing Captain Davis to participate in the rolling

3

roadblock, and committing the same violations as Capt. Davis and causing the same damage.

- <u>Corporal Jeff Hatfield</u>: Written reprimand for leaving the city limits to check on Pacovsky and Davis after hearing the radio report of their wreck.

The Board of Alderman agreed and voted unanimously to implement the disciplinary action recommended by Chief Fortenberry. The Board instructed the chief to inform Davis and Pacovsky of its decision and offer them the opportunity to resign in lieu of termination. After meeting with both individuals, both declined to submit their resignation and their employment was terminated on February 14, 2006.

Chris Davis and Bob Pacovsky filed charges of discrimination with the Equal Employment Opportunity Commission against the City of Booneville alleging that they were terminated on the basis of their age. After receiving their right to sue letter, they brought suit in this court. Thereafter, the Defendants filed this Motion for Summary Judgment.

*Summary Judgment Standard*

Summary judgment is warranted under Rule 56(c) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes

demonstrate the absence of a genuine issue of material fact. Id. at 323, 106 S. Ct. 2548. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324, 106 S. Ct. 2548; Willis v. Roche Biomedical Labs., Inc., 61 F.3d 313, 315 (5th Cir. 1995). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not adequate substitutes for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

*Discussion and Analysis*

The Age Discrimination in Employment Act of 1967 ("ADEA") provides "it shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. § 623(a)(1). Specifically, the ADEA is intended to protect employees over forty years of age from discriminatory practices.

Intentional discrimination can be proved through either direct or circumstantial evidence. Russell v. McKinney Hosp. Venture, 235 F.3d 219, 222 (5th Cir. 2000). If the record is devoid of direct evidence, the plaintiff must bring forth circumstantial evidence to carry his or her burden. Id. A case that involves only circumstantial evidence is governed under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

Applying the McDonnell Douglas framework, the plaintiff carries the initial burden of establishing a prima facie case of discrimination. Id. at 802, 93 S. Ct. 1817. Plaintiff must demonstrate that he or she (1) suffered an adverse employment action; (2) was qualified for the

5

position; (3) was within the protected class at the time of the decision; and, (4) that the person selected was not within the protected class, or, that others similarly situated but not within the protected class were more favorably treated, or, that the plaintiff was otherwise discharged because of her age. Rios v. Rossotti, 252 F.3d 375, 378 (5th Cir. 2001); Eaves v. K-Mart Corp., 193 F. Supp. 2d 887, 893 (S.D. Miss. 2001).

If the plaintiff establishes a prima facie case of discrimination, the defendant then has the opportunity to rebut the presumption of discrimination by proffering a legitimate, nondiscriminatory reason for the adverse employment action. Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 142, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). An employer can meet that burden by bringing forth admissible evidence of an explanation that would be legally sufficient to justify a judgment for the employer. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993); Rachid v. Jack In The Box, 376 F.3d 305, 312 (5th Cir. 2004); Bodenheimer v. PPG Indus. Inc., 5 F.3d 955, 957 (5th Cir. 1993). The burden on the Defendant is minimal and is not subject to a credibility determination. Hicks, 509 U.S. at 507, 509, 113 S. Ct. 2742; Nichols v. Loral Vought Sys. Corp., 81 F.3d 38, 41 (5th Cir. 1996).

If the defendant meets that burden, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination; or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic. Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc., 482 F.3d 408, 412 (5th Cir. 2007); Rachid, 376 F.3d at 312. In sum, in considering whether the case is one of intentional discrimination, "a court should

6

consider 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case.'" Crawford v. Formosa Plastics Corp., La., 234 F.3d 899, 902 (5th Cir. 2000) (quoting Reeves, 53 U.S. at 148-49, 120 S. Ct. 2097). Further, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Reeves, 530 U.S. at 143, 120 S. Ct. 2097. The Supreme Court of the United States in Hicks stated that "[i]t is not enough, in other words, to *dis* believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." Hicks, 509 U.S. at 519, 113 S. Ct. 2742. While the Court recognizes that Hicks did not involve summary judgment, the Court finds that argument applicable to the motion for summary judgment in the case *sub judice*. Therefore, the Plaintiff must affirmatively make at least a minimal showing of discrimination to create a genuine issue of material facts in order to survive summary judgment. See Berquist v. Washington Mut. Bank, 500 F.3d 344, 356-57 (5th Cir. 2007); see Keelan v. Majesco Software, Inc., 407 F.3d 332, 345-46 (5th Cir. 2005).

Pacovsky, 54 at the time of the accident, and Chris Davis, age 43, are members of the class protected by the ADEA. It is undisputed in the Motion for Summary Judgment that they are both qualified for the positions they held, and they were discharged from their employment. However, there is a dispute as to whether Plaintiffs have proven whether others similarly situated but not within the protected class were more favorably treated or whether Plaintiffs were terminated because of their age.

Plaintiffs cite as evidence of a similar situation in which younger employees were treated more favorable an accident involving Officers Michael Hall, Josh Davis, and Shane Kennedy, all

under forty. On October 5, 2006, Officers Hall, Davis, and Kennedy in separate patrol cars responded to an emergency 911 call to aid a woman threatened by a man wielding a knife. En route to the scene, two of the patrol units were totaled as a result of the lead car making an improper left turn. The internal affairs investigation noted that the officers violated the department policy of not traveling more than twenty miles per hour above the posted speed limit. All three were cited for driving around 78 miles per hour in a 45 mile per hour zone when the accident occurred. Sergeant Hall was suspended for seven shifts without pay and placed on six months probation. Officer Davis was suspended for five shifts without pay and placed on six months probation. Officer Kennedy was suspended for three shifts without pay and placed on six months probation. Plaintiffs argue that because these three officers, all under forty, were not terminated, the Booneville Police Department treats younger officers more favorably than older officers.

Other than the damage caused by these two incidents, there are not many similarities to note. In Pacovsky and Capt. Davis' incident, they ignored Capt. Bridges command to remain inside the city limits and intentionally placed themselves in the path of a high speed pursuit on a dark county road. In the later incident, the officers were responding to an emergency call inside the city limits, and they did not intentionally create a hazard as Pacovsky and Capt. Davis did by completely stopping in the route of a fleeing suspect known to be traveling in excessive speeds.

Plaintiffs also cite a pursuit by Office Josh Davis and Chief Fortenberry of a suspect named Jared Penna. Penna tried to evade officers on a curvy road and lost control of his vehicle. There was no bumping or ramming of the fleeing vehicle by Officer Davis. Further, Officer Davis had his supervisor's permission to engage in the pursuit. Plaintiffs point to a departmental policy that states

8

when a suspect's identity is known, officers are not to engage them in a high speed pursuit. Officer Davis knew the suspect was Jared Penna; however, at the time of his pursuit, Penna was suspected of homicide or aggravated assault.

Plaintiffs further provide as evidence, an excerpt of Nicky Owen's deposition. Owen testified that prior to his voluntary departure in August of 2004, Fortenberry had a policy of "targeting us older guys." Owen did not specify any particular instances in which Fortenberry had blatantly favored younger over older officers. This testimony is speculative at best and improper evidence for a motion for summary judgment.

Plaintiffs' attempts to establish their prima facie case is weak. They have failed to show any sufficient similarities between the Pacovsky/Davis incident at issue here and the two other incidents cited. As such, Plaintiff has wholly failed to put forth enough evidence to satisfy his prima facie case. Regardless, even if the Plaintiffs had satisfied their initial burden, they have failed to rebut the Defendants proffered reason for termination.

The Defendants offer as their legitimate, non-discriminatory reason for terminating the Plaintiffs the infractions cited above. "The ADEA was not intended to be a vehicle for judicial second-guessing of employment decisions, nor was it intended to transform the courts into personnel managers." Bodenheimer, 5 F.3d at 959 (quoting Bienkowski v. Am. Airlines, 851 F.2d 1503, 1507-08 (5th Cir. 1988)). The Court opines that the Defendant has proffered a legitimate, nondiscriminatory reason for terminating the Plaintiffs, and thus, has satisfied its burden.

Following the Defendant satisfying its burden, the burden now shifts back to the Plaintiffs to *prove* that the reason is pretextual. Rachid, 376 F.3d at 312. Mere subjective assertions, without

more, are not enough to grant plaintiff relief in a discrimination case. See Ray v. Tandem Computers, Inc., 63 F.3d 429, 434-35 (5th Cir. 1995) (holding that bald assertion alleging younger workers were preferred and older workers were forced out are inadequate to permit a finding that Defendant's reasons are pretextual); Molnar v. Ebasco Constructors, Inc., 986 F.2d 115, 119 (5th Cir. 1993).

In examining the record as a whole, and taking the evidence in the light most favorable to the Plaintiffs, the Court is of the opinion that the only circumstantial evidence that Plaintiff has brought forth that the Defendant's reason is pretextual is the assertion from Nicky Owen that Fortenberry preferred younger officers.

The Plaintiff has not offered any evidence of ageist comments made by the Defendant, any statistics regarding termination or disciplinary actions, nor any other relevant evidence which would create a genuine dispute of material fact. While the Court is aware that comments alone do not create a genuine dispute of material facts, the Court's diligent search has revealed that cases which survive summary judgment predominately contain additional evidence showing a discriminatory purpose in the adverse action. See Keelan, 407 F.3d at 345-46 (stating that even if plaintiff would have established a prima facie case, the plaintiff's weak statistical evidence and weak evidence of comments did not even create a fact issue as to a pretext); see Rachid, 376 F.3d at 315 (holding that employer's comments and additional evidence created issues of material fact); see Bodenheimer, 5 F.3d at 959 (stating that a facially neutral comment and other legal conclusions did not amount to a genuine dispute of material fact); see Bienkowski, 851 F.2d 1503 (holding that the Plaintiff's evidence, predominately based on comments made by the defendant, was barely sufficient to survive

summary judgment). In this case, the plaintiff has failed to proffer *any* such evidence. See Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 814 (5th Cir. 1991) (holding that plaintiff's bald assertions failed to prove defendant's reasons were pretextual). In sum, none of the above arguments proves that Defendant's reason was a pretext. Moreover, Plaintiffs have failed to support their assertion that age was even a *part* of the reason for their termination. They are merely subjective assertions which do not warrant a genuine dispute of material facts.

*Conclusion*

The Plaintiff has not satisfied its initial burden, the Defendant has articulated a legitimate, nondiscriminatory reason for terminating the Plaintiff, and the Plaintiff has failed to offer proof to create a genuine issue of material fact that the reason is not true or was a pretext for discrimination. Bald, subjective, or conclusory allegations will not create a genuine issue of material fact. Plaintiff has only proffered such aforementioned allegations and has failed to bring forth any evidence that the Defendant's reason was a pretext. Therefore, the Defendant's Motion for Summary Judgment is GRANTED, any pending motions are hereby TERMINATED, and the Clerk is ordered to CLOSE the case.

A separate order shall issue in accordance with this opinion.

**SO ORDERED**, this the   26th   day of August, 2008.

                                             **/s/ Sharion Aycock**
                                             U.S. DISTRICT JUDGE